FILED
IN OPEN COURT

OCT 2 5 2023

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | |
|---|---|
| UNITED STATES OF AMERICA | ) **UNDER SEAL** |
| | ) |
| v. | ) CRIMINAL NO. 2:23-cr-$12\Upsilon$ |
| | ) |
| ▮▮▮▮▮ | ) 21 U.S.C. § 846 |
| (Counts 1, 7) | ) Conspiracy to Manufacture, Distribute, and |
| | ) Possess with Intent to Manufacture and |
| ▮▮▮▮▮ | ) Distribute Methamphetamine, Cocaine, and |
| (Count 1) | ) Fentanyl |
| | ) (Count 1) |
| ▮▮▮▮▮ | ) |
| (Count 1) | ) 21 U.S.C. § 841(a)(1) |
| | ) Possession and Attempted Possession with |
| ▮▮▮▮▮ | ) Intent to Distribute and Distribution of |
| (Counts 1, 10, 11) | ) Methamphetamine, Cocaine, and Fentanyl |
| | ) (Counts 2-11) |
| JARED HADDOCK, | ) |
| (Counts 1, 2, 3, 4, 8, 14, 15) | ) 21 U.S.C. § 856(a)(2) |
| | ) Maintaining a Drug-Involved Premises |
| ▮▮▮▮▮ | ) (Counts 12-13) |
| (Counts 1, 5, 6, 9) | ) |
| | ) 18 U.S.C. § 924(c) |
| ▮▮▮▮▮ | ) Possession of Firearms in Furtherance of |
| (Count 1) | ) Drug Trafficking |
| | ) (Count 14) |
| ▮▮▮▮▮ | ) |
| (Count 1) | ) 18 U.S.C. § 922(g)(1) |
| | ) Felon in Possession of Firearms |
| ▮▮▮▮▮ | ) (Count 15) |
| (Count 1) | ) |
| | ) 18 U.S.C § 924(d); 21 U.S.C § 853 |
| ▮▮▮▮▮ | ) 28 U.S.C § 2461(c) |
| (Counts 1, 12) | ) Criminal Forfeiture |
| | ) |
| and | ) |
| | ) |
| ▮▮▮▮▮ | ) |
| (Counts 1, 13) | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

## **INDICTMENT**

October 2023 TERM – at Norfolk

THE GRAND JURY CHARGES THAT:

### COUNT ONE

(Conspiracy to Manufacture, Distribute, and Possess with Intent to Manufacture and Distribute Methamphetamine, Cocaine, and Fentanyl)

Beginning in and around February 2021 and continuing thereafter up to and including the

date of this Indictment, in the Eastern District of Virginia and elsewhere, the following defendants:



did knowingly and intentionally combine, conspire, confederate, and agree with each other and

with other persons, both known and unknown to the grand jury, to commit the following offenses:

1. To knowingly and intentionally manufacture, distribute, and possess with intent to

manufacture and distribute a quantity of a mixture and substance containing a detectable amount

of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance,

in violation of Title 21, United States Code, Sections 841(a)(1). The quantity of

methamphetamine involved in the conspiracy is:

> a. With respect to defendants ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
> ▇▇▇ JARED HADDOCK, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
> ▇▇▇▇▇ the amount of methamphetamine, involved in the conspiracy
> attributable to each of them as a result of their own conduct, and the conduct of
> other conspirators reasonably foreseeable to each of them, is more than five

hundred (500) grams of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(A); and

b. With respect to defendants ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮ the amount of methamphetamine, involved in the conspiracy attributable to each of them as a result of their own conduct, and the conduct of other conspirators reasonably foreseeable to each of them, is more than fifty (50) grams of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(B).

2.     To knowingly and intentionally manufacture, distribute, and possess with intent to

manufacture and distribute a quantity of a mixture and substance containing a detectable amount

of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code,

Sections 841(a)(1). The quality of cocaine involved in the conspiracy is:

a. With respect to defendant, ▮▮▮▮▮▮▮▮▮▮▮ the amount of cocaine involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is more than five hundred (500) grams of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(B).

b. With respect to defendants ▮▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮▮▮
▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ the amount of cocaine, involved in the conspiracy attributable to each of them as a result of their own conduct, and the conduct of other conspirators reasonably foreseeable to them, is an amount of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(C).

3.     To knowingly and intentionally manufacture, distribute, and possess with intent to

manufacture and distribute a quantity of a mixture and substance containing a detectable amount

of phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide (hereinafter "fentanyl"), a

Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1).

The quantity of fentanyl involved in the conspiracy is:

3

a. With respect to defendants ████████████████████████ JARED HADDOCK, ████████
████████ and the amount of fentanyl involved in the conspiracy attributable to each of them as a result of their own conduct, and the conduct of other conspirators reasonably foreseeable to each of them, is more than forty (40) grams of fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(B).

b. With respect to defendants ████████████████
████ the amount of fentanyl involved in the conspiracy attributable to each of them as a result of their own conduct, and the conduct of other conspirators reasonably foreseeable to them, is an amount of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance; in violation of Title 21, United States Code, Section 841(b)(1)(C).

### Ways, Manner, and Means of the Conspiracy

The objective of the conspiracy was to make money through the importation, manufacture, and distribution of methamphetamine, cocaine, and fentanyl. The ways, manner, and means by which that objective was carried out included, but were not limited to, the following:

1. It was a part of the conspiracy that the defendants and unindicted co-conspirators distributed and possessed with intent to distribute quantities of methamphetamine, cocaine, and fentanyl in the Eastern District of Virginia, and elsewhere.

2. It was a further part of the conspiracy for ████████████████ and separately charged co-conspirator #1 ("SCD-1") to procure methamphetamine from out-of-state sources and have it shipped in wholesale quantities to the Eastern District of Virginia for further distribution.

3. It was a further part of the conspiracy for ████████████████ and SCD-1 to supply and furnish methamphetamine, cocaine, and fentanyl to each other and other conspirators on an as-needed basis.

4. It was a further part of the conspiracy for ████████████████ and SCD-1 to frequently confer with each other about the day-to-day affairs of narcotics distribution, including setting pricing, receiving and paying for shipments, storing, processing, and distributing narcotics,

4

and managing their "business" relationship with other defendants and co-conspirators.

5.      It was a further part of the conspiracy for ███████████████████
███████ JARED HADDOCK, █████████████████████████████
█████████████████████████████████████ to receive narcotics from
███████████ and/or SCD-1 that would be further distributed to other distributors and/or
users.

6.      It was a further part of the conspiracy for the defendants and their co-conspirators
to use internet payment services, such as "Zelle" and "CashApp," to make payments for narcotics.

7.      It was a further part of the conspiracy for ████████████ on occasion, to
distribute fentanyl in the form of pressed imitation prescription pills purporting to be roxicodone.

8.      It was a further part of the conspiracy that the defendants and other co-conspirators
used residences in and around Hampton Roads to receive, store, and process narcotics, including
but not limited to the following: a) ███████████ residence on ███████████████ in
Norfolk, Virginia; b) ███████████ residence on ██ ███████ in Suffolk, Virginia; and
c) ███████████ apartment in a complex located at the intersection of ███████████
███████████ in Norfolk, Virginia.

9.      It was a further part of the conspiracy for the defendants and their co-conspirators
to use communication facilities (i.e., cellular phones) to facilitate the day-to-day affairs of the
conspiracy, including negotiating the prices for narcotics, to arrange for the deliveries of such
narcotics, and to further facilitate the commission of felony drug offenses. During the period of
the conspiracy, and in furtherance therefore, ███████████ utilized, among other phones, a
cellular telephone assigned telephone number (757) XXX-███, as well as a cellular telephone
assigned telephone number (757) XXX-██; ███████████ utilized, among other phones, a

5

cellular telephone assigned telephone number (757) XXX-███ ████████ utilized a cellular telephone assigned telephone number (252) XXX-███ ████████ utilized a cellular telephone assigned telephone number (757) XXX███); JARED HADDOCK utilized, among other phones, a cellular telephone assigned telephone number (757) XXX-3893; █████ ████████ utilized, among other phones, a cellular telephone assigned telephone number (757) XXX-███; █████████ utilized, among other phones, a cellular telephone assigned telephone number (757) XXX███ as well as a cellular telephone assigned telephone number (757) XXX-███; ██████████ utilized a cellular telephone assigned telephone number (757) XXX-███ ████████ utilized a cellular telephone assigned telephone number (757) XXX-███ as well as a cellular telephone assigned telephone number (757) XXX-███ ████████ utilized a cellular telephone assigned telephone number (757) XXX-███ and ██████████ utilized a cellular telephone assigned telephone number (757) XXX-███ During the course of the conspiracy the defendants, unindicted co-conspirators, narcotics customers, and others utilized the above-referenced phone numbers to order narcotics, sell narcotics, prepare narcotics for further distribution, coordinate meetings, deliveries of narcotics, collection of narcotics debts, and otherwise facilitate narcotics trafficking among the members of the conspiracy.

10. It was a further part of the conspiracy that the defendant and other co-conspirators used slang, coded terms, and other techniques when discussing the quantities, pricing, and/or types of narcotics in an effort to frustrate any efforts by law enforcement to infiltrate the conspiracy. For example, the terms "creamery" and/or "ice cream," "fast" and/or "go fast," "Tina," and also "ice" were used to reference methamphetamine; "girl" was often used to reference cocaine, and the terms "boy" and/or "food" were commonly used to reference fentanyl (and/or heroin).

## Overt Acts

The objective of the conspiracy was making money through the distribution of narcotics. In furtherance of the conspiracy and to accomplish the objective thereof, the following overt acts, among others, were committed in the Eastern District of Virginia, and elsewhere:

1.     In May 2021, SCD-1 was introduced to ▮▮▮ ▮▮▮.     SCD-1 had previously been obtaining narcotics from another source, but shortly after SCD-1 and ▮ ▮ met, ▮▮▮ began distributing narcotics to SCD-1.  Later, beginning on or after May 2021 and continuing through 2022, ▮▮▮ would regularly provide SCD-1 with large quantities of methamphetamine that ▮▮ ▮▮ had received via interstate shipments, which SCD-1 would further distribute to other mid-level dealers.  On one occasion, ▮▮▮ provided SCD-1 with approximately twenty (20) pounds of methamphetamine that ▮▮▮ had shipped to Norfolk, Virginia from California in a parcel that also contained stuffed animals.

2.     During the conspiracy, ▮▮▮ and SCD-1 often communicated about the narcotics trade, including the management of the dealers working under them and the pricing of narcotics.  For example, on May 8, 2022, after receiving a call from SCD-1, ▮▮ and SCD-1 engaged in a conversation about narcotics trafficking.  During that conversation, among other things, ▮▮▮ stated, "cause that's how I would do you. I would charge…right now, honestly, no matter what… right now…with me talking to you on the other end, I would be like, give me three bands a joint. Cause you…I know…I know I gotta keep it at three bands, and I got them closer to two. You know what I'm sayin', like, so that would be a band profit for me off each one, and I be happy and you can keep the other two bands. That's how I would do it, but I ain't, I know, I know you can't do- ain't gon' do it like that 'cause you got a

7

little situation and you got a whole lot of people on your line already. So, I'm cool with making five hundred dollars off of it. So, if you can charge me forty-five a pound, we can move at every one you got tomorrow." SCD-1 replied, "…you said for- wait, you said forty-five a pound?"

stated, "Yup. I ain't even counting no ounces we ain't even breaking it down we gon do it by the pound." After SCD-1 agreed, continued, "Like I said… if you paying three k a pound you profiting fifteen hundred off each one of 'em that didn't move that she buy tomorrow but it's all COD."

3. On March 23, 2022, during a phone call with SCD-1, relayed that he had been offered marijuana while visiting a casino, declined, and in return offered to sell the man other narcotics: stated, "N**** tried to sell me some bud" and then continued, "I said, 'Man I don't want that bullsh*t.' He said, 'You sure?' I said, 'Definitely not.' I said, 'You need to be hollerin' at me.' He said, 'For what?' I said, 'Whatever the f*ck you want.'" As explained later during the same conversation, "I'm about to flat me a brick and—and uh… in Fredericksburg at a gram at time up there. Fifty dollars a gram. I'ma make me fourteen hundred off each zip for all thirty-six of 'em, one time. That's my goal, that's what I'm on right now." When referred to a "brick" he was referring to a kilogram and when he mentioned "zip" he was referring to an ounce of narcotics.

4. On May 31, 2022, placed an outgoing call to During the call, asked, "Did you want some...did you want some of this food?" responded, "Oh, yeah. H***, yeah, god d*** I ain't get much, tryin' to fix this s***. I'm 'bout to come out through the front door."

5. On June 8, 2022, and discussed the distribution of narcotics and the price of various quantities of narcotics. stated,

8

"Sh*t…'cause you was like, 'Tell that n**** thirty-two' …  I'm tellin' that n**** nine-fifty, goddamn it."           replied, "… what nine-fifty equal to? About thirty—'bout thirty-three?"           offered, "Thirty-four two" and           responded, "Oh yeah, same thing."           then stated, "H*ll nah that's a two—two band difference" and           continued, "I'm sayin'…if you doin' nine-fifty all the way down like I—me personally. I'm—right now…"           then interjected, "Nah, right now his first time" and           responded, "I'm talkin' 'bout me—I'm talkin' 'bout right now. I—if I get 'em. I'm sellin' for god d*mn band, but if a m********* buy a whole joint, he can get that b**** for thirty-one! Twenty-nine! Twenty-eight! Depending on what it is, how many he want, you feel me? …"  After           agreed,           continued, "…two, three, four, five, you know what I'm sayin'?"           then furthered, "He…he ain't jumpin' out the gate gettin' a whole joint without gettin' under it bro" and           continued, "… then we at a band a zip."           agreed, and           continued, "That's better—that's better than a lot of numbers around here and that sh*t jumpin' back. I done jumped it back myself like I said."

6.     In September 2022,                         travelled to                         and obtained a new California-based source of supply for large shipments of methamphetamine.                         and SCD-1 agreed that           would sell the methamphetamine to SCD-1 for an agreed-upon price.

7.     From at least October 2022 through January 2023, SCD-1 distributed methamphetamine and fentanyl to

8.     On November 5, 2022,                         had a telephone call with SCD-1 in which they discussed methamphetamine.                         began "Um, in a couple hours, I'ma need to get up withchu and-and…get that from you again. They go fast."  SCD-1

9

replied, "A'ight, bet. A'ight…um, you want me to hit you when I come over that side?" ▮▮▮▮▮▮▮▮▮▮▮▮ then responded, "Yeah, hit me, and see what I'm doin' and sh*t" and SCD-1 concluded "A'ight, bet."

9. Beginning in August 2022, and continuing for approximately two months, SCD-1 distributed methamphetamine, cocaine, and fentanyl to ▮▮▮▮▮▮▮▮▮

10. On September 13, 2022, ▮▮▮▮▮▮▮▮ discussed narcotics during a telephone call with SCD-1. After SCD-1 asked, "Um, I wanted to know what I'm uh, what'chu—what'chu uh…what'chu had?" ▮▮▮▮▮ replied, "I got—I got a, I got a, I got all the Tina and I got some of the um, I got two on the um, on the food. I think I have nine food left." SCD-1 then stated, "A'ight good. A'ight say less I got'chu. A'ight bet."

11. On October 11, 2022, at Norfolk, Virginia, ▮▮▮▮▮ ▮▮▮▮▮ possessed approximately 79 grams of methamphetamine, approximately 99 grams of fentanyl, and approximately 40 grams of cocaine.

12. After the summer of 2022, SCD-1 began distributing methamphetamine and other controlled substances to JARED HADDOCK.

13. On August 18, 2022, at Virginia Beach, JARED HADDOCK distributed approximately 28 grams of methamphetamine to Confidential Source #1 ("CS-1") in exchange for $450.

14. On November 29, 2022, at Virginia Beach, JARED HADDOCK distributed approximately 28 grams of methamphetamine to CS-1 in exchange for $400.

15. On January 5, 2023, at Virginia Beach, JARED HADDOCK distributed approximately 83 grams of methamphetamine to CS-1 for an amount of United States currency.

16. On January 6, 2023, at Virginia Beach, JARED HADDOCK possessed

10

approximately 648 grams of methamphetamine, approximately 107 grams of fentanyl, two firearms—a Mossberg CN 108 shotgun and a Jennings 22 semiautomatic handgun—more than $5,000 in United States Currency, several digital scales, and other drug paraphernalia.

17.    On April 1, 2022, ▮▮▮▮▮▮▮ discussed the distribution of narcotics over the telephone with SCD-1. SCD-1 stated, "I got one more move for you to make. While you go make that move, I'm gon' go get you right. And…we'll meet back—we'll meet back at the same place 'cause…it was—what I—what I had I had to dig in for this person and it only made sense …so - my plan is…let—it's a two piece. So, I'ma let you take these two, shoot there while I shoot and grab, and then we'll be back. We should be back around the same time 'cause we're not goin' far from each other. A'ight…so I'm sittin' here waitin' on you." ▮▮▮▮▮▮▮ replied, "Okay I'll see you in a minute, a'ight. A'ight bye."

18.    On April 9, 2022, ▮▮▮▮▮▮▮ during a phone call with SCD-1, discussed payments for narcotics as well as ▮▮▮▮▮ and ▮▮▮▮▮▮▮ ▮▮▮▮▮ stated, "And so, I was gonna tell you too, ▮ has his money and he's ready. Do you want me to bring him with me?" SCD-1 replied, "Can you just grab that and then I just give that to you and you can send it back with him?" ▮▮▮▮▮ interjected, "Perfect. No, that's fine" and SCD-1 continued, "A'ight, yeah 'cause I can just give that to you and that you can just give me that bread." After ▮▮▮▮▮ answered, "Okay," SCD-1 stated, "A'ight, that's ▮▮▮ hittin' me right now. I- I'll see. . ." and ▮▮▮▮▮ stated, "Okay, then tell her, um… I don't know why that, uh, money didn't go through on Cash App. Tell her I've got her. I'm going to bring that too."

19.    On December 6, 2022, at Virginia Beach, ▮▮▮▮▮▮ ▮▮▮▮▮ distributed approximately 54 grams of methamphetamine to CS-1 for an amount of United States currency.

20.     On January 4, 2023, at Portsmouth and Virginia Beach, ▮▮▮▮▮▮▮▮ distributed approximately 107 grams of methamphetamine to CS-1 for an amount of United States currency.

21.     On or about January 25, 2023, at Portsmouth, Virginia, ▮▮▮▮▮▮▮▮ possessed approximately 9 grams of methamphetamine for an amount of United States currency.

22.     In and around February 2022, ▮▮▮▮▮▮▮▮ introduced ▮▮▮▮▮▮ to SCD-1, who thereafter began distributing methamphetamine to ▮▮▮▮▮.

23.     On April 9, 2022, ▮▮▮▮▮▮ sent a text message to SCD-1 stating, "Yo boss I was just checking in with you wanted to touch base with you and let you know I was ready to come see you boss I'm going to ride in with ▮▮▮▮" Later that same day, ▮▮▮▮▮▮ sent another text message to SCD-1 stating, "Yo boss I'm going to cash app holly that bread bro just letting you know boss."

24.     Beginning as early as January 2022, and continuing through April 2022, ▮▮▮▮▮ ▮▮▮▮▮ used ▮▮▮▮▮▮▮▮ residence on ▮▮▮▮▮▮ ▮▮ in Suffolk, Virginia, as a stash house for narcotics.   SCD-1 also used ▮▮▮▮▮▮▮ residence on ▮▮▮▮▮▮ to store narcotics and to receive parcels containing methamphetamine.

25.     On March 30, 2022, ▮▮▮▮▮▮▮ and SCD-1 met at ▮▮▮▮▮▮▮ residence on ▮▮▮▮▮▮ in Suffolk, Virginia.   Prior to the meeting ▮▮▮▮▮▮▮ made a telephone call to SCD-1 during which SCD-1 asked ▮▮▮▮▮▮ to bring him marijuana, which SCD-1 would pay him for once he arrived.

26.     On April 13, 2022, SCD-1 called ▮▮▮▮▮▮▮ and asked, "Hey, do you need anything over there"?   ▮▮▮▮ replied "Um, I mean, we have like four left and, uh, we don't have any food, you didn't leave any food, but I don't know what's in the case."   SCD-1 continued, "I'm

12

trying to see…do I have Tina in the case?  Well either way even if I do, it's not a lot. A' right, uh…you…you doing anything?"  ██████ stated, "I might have a play here soon" and SCD-1 responded, "Alright, cool then I'll take my time coming there."

27.    From mid-2022 through September 2022, ████████ and SCD-1 used ██████ residence on ███████ in Norfolk, Virginia, to store, process, and distribute narcotics.

28.    On May 31, 2022, ██████ discussed collecting supplies for adulterating and packaging narcotics with ██████ During a telephone call, ██████ asked ██████ "You got poster board?" ██████ responded, "Um, I don't think so I'm looking for it right now. No, but you can get one at CVS." ██████ asked, "You think… get some, get one?" ██████ responded in the affirmative and ██████ continued, "And… (inaudible) umm- umm- Arm & Hammer?" ██████ responded affirmatively and ██████ then advised, "A'right, I'll be over there in about fifteen, ten."

29.    On June 6, 2022, ██████ called ██████.  During the telephone call, ██████ stated, "I wanted you to FaceTime me because I didn't realize that bag of sh*t you gave me won't tie. So, I—when I went to go and f****** grab out of my lil' case. It spilled some so, I just didn't—you know what I'm sayin'?  I'm tryna get as much as I can. It, like, fell on my lap and on my hand." ██████ then interrupted, "Alright" and ██████ continued, "you to see, you know what I'm sayin'? So you didn't think anything crazy…."

30.    On September 9, 2022, ██████ discussed narcotics payment and the use of her residence on ███████ in Norfolk for narcotics storage over the phone with SCD-1.  During the call, SCD-1 stated, "So, what was you doin' with those? You was—you—what was you giving me? For—I gave you two." ██████ responded, "…if I can do one-fifty…each. That

13

would be great." SCD-1 countered, "Mm do one-fifty, nah you can do um…you can do two-hundred each."     then stated, "Oh God! 'Cause I'm only selling them for three, I'm selling the whole things. Like that's only a hundred dollars profit. It's like not even worth it." SCD-1 replied, "That's how I feel though. I'm practically... I'm—it's like I'm giving it away for free" and ▮▮▮▮▮▮ continued, "No, but I mean I'm also you know, my house is you know being used and I'm not getting half."

31.     In and around September 2022, the power was cut off to ▮▮▮▮▮▮ residence on ▮▮▮▮▮▮ Road in Norfolk, Virginia, making it difficult to continue to process narcotics at that location. ▮▮▮▮▮▮ thereafter permitted ▮▮▮▮▮▮ and SCD-1 to use his residential unit in the apartment building at ▮▮▮▮▮▮ in Norfolk, Virginia, to process and manufacture narcotics.

32.     In October 2022, ▮▮ assisted ▮▮▮▮▮▮ with sending payments via electronic services to a California supplier for an upcoming shipment of narcotics. During a phone call on October 17, 2022, ▮▮▮▮▮▮ told ▮▮ that "He say call him before you, uh, Zelle or Cash App." Later in the conversation, ▮▮ asked, "So what do you want me to do?" ▮▮▮▮▮▮ then stated, "A'ight. Can you Cash App? ... it would have to come from the ba—like, she can't— the way she would Cash App…" and later continued, "…it in her bank she could send it on her Cash App. She has five thousand—the limit."     then asked, "Then…can I get three people to do a thousand, or twelve hundred, or eleven hundred? Can w—can I—can we fig—can, uh, two people, uh—it's, it's no way we can get it to him today is what you're sayin'?" ▮▮ responded, "So…what—well, what I'm thinking is that the—I feel like the Cash App deposit is five hundred, so it would have to be, like… uh, (*inaudible*)—I mean, we can do it, but it would be like hella people." ▮▮▮▮▮▮ responded, "Do as many as you can today. If it's only two or three,

14

just do that today, and then do as many as you can tomorrow. But I gotta figure it out; I gotta figure out a way. I gotta do somethin'" and later stated, "Get that money to him today. As ma—as much as you can; that's what I want you to do. Whether it's five hundred dollars, or whether it's…" When ▉ offered, "I can do a band: I can do five on mine, and five on my mom's," ▉ responded, "A'ight then, there you go. Do as much as you can. That's all I'm asking."

33.    In November 2022, ▉ caused to be sent via the United States Postal Service a package that contained, inside a stuffed animal, approximately one kilogram of cocaine from an address in California to an address in Suffolk, Virginia.  The postage was paid on November 15, 2022 and delivery of the package was expected on November 18, 2022.

34.    On November 17, 2022, ▉ discussed the package of cocaine in a telephone call with ▉ and stated: "Aww yeah, yeah, yeah, I got, we got, say we got something coming tomorrow. Should be here tomorrow. It ain't land yet, it ain't land it Virginia yet, but uh, yeah, we got some work."

35.    Beginning in September 2022, and continuing through February 2023, both ▉ and SCD-1 used ▉ apartment on ▉ in Norfolk, Virginia to process narcotics.  For example, during a telephone call on January 7, 2023, ▉ discussed adulterating and repackaging narcotics with ▉ and stated, "I need you take me out uh…uh…uh twenty-one (21) grams of some uh…twenty-two (22) grams and some cut, too." ▉ then responded, "A'ight, you gotta bring a scale, I ain't even got one."

36.    Both ▉ ▉ and SCD-1 also provided large amounts of methamphetamine to ▉ who would in turn sell the methamphetamine to other individuals.  For example, on January 13, 2023, during a telephone call with ▉

15

████████████ stated, "Nah, I'm talkin' 'bout that, um, whatchamacallit… the, um, the Ice."

████████then stated, "Oh. What about it? What you say about that?" ████████ replied,

"█ people want five jaunts if they got it" and ████████ replied, "I'ma get as many as I can…"

(All in violation of Title 21, United States Code, Section 846.)

## COUNT TWO

(Distribution of Methamphetamine)

On or about August 18, 2022, at Virginia Beach, in the Eastern District of Virginia, the defendant, JARED HADDOCK, did knowingly and intentionally distribute a quantity of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance.

(In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).)

## COUNT THREE

(Distribution of Methamphetamine)

On or about November 29, 2022, at Virginia Beach, in the Eastern District of Virginia, the defendant, JARED HADDOCK, did knowingly and intentionally distribute a quantity of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance.

(In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).)

## COUNT FOUR

(Distribution of Methamphetamine)

On or about January 5, 2023, at Virginia Beach, in the Eastern District of Virginia, the defendant, JARED HADDOCK, did knowingly and intentionally distribute 50 grams or more of

methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance.

(In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).)

## COUNT FIVE

(Distribution of Methamphetamine)

On or about December 6, 2022, at Virginia Beach, in the Eastern District of Virginia, the defendant,    did knowingly and intentionally distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance.

(In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).)

## COUNT SIX

(Distribution of Methamphetamine)

On or about January 4, 2023, at Virginia Beach, in the Eastern District of Virginia, the defendant,    did knowingly and intentionally distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance.

(In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).)

## COUNT SEVEN

(Attempted Possession with Intent to Distribute Cocaine)

On or about November 15, 2022, at in the Eastern District of Virginia and elsewhere, the defendant,    did knowingly and intentionally attempt to possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance.

(In violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B), and 846.)

17

## COUNT EIGHT

(Possession with Intent to Distribute Methamphetamine)

On or about January 6, 2023, at Virginia Beach, in the Eastern District of Virginia, the defendant, JARED HADDOCK, did knowingly and intentionally possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance.

(In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).)

## COUNT NINE

(Possession with Intent to Distribute Methamphetamine)

On or about January 25, 2023, at Portsmouth, in the Eastern District of Virginia, the defendant, █████████████ did knowingly and intentionally possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance.

(In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).)

## COUNT TEN

(Possession with Intent to Distribute Methamphetamine)

On or about October 11, 2022, at Norfolk, in the Eastern District of Virginia, the defendant, █████████████ did knowingly and intentionally possess with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance.

(In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B).)

18

## COUNT ELEVEN

### (Possession with Intent to Distribute Fentanyl)

On or about October 11, 2022, at Norfolk, in the Eastern District of Virginia, the defendant,

did knowingly and intentionally possess with intent to distribute 40 grams or more of fentanyl, a Schedule II controlled substance.

(In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B).)

## COUNT TWELVE

### (Maintaining a Drug-Involved Premises)

In and around January 2022 to in and around April 2022, in the Eastern District of Virginia, the defendant,             did knowingly and unlawfully manage and control real property and improvements located on the                            in Suffolk, Virginia, as an owner and occupant, and did knowingly and intentionally make available for use said place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

(In violation of Title 21, United States Code, Section 856(a)(2).)

## COUNT THIRTEEN

### (Maintaining a Drug-Involved Premises)

In and around mid-2022 to in and around September 2022, in the Eastern District of Virginia, the defendant,             did knowingly and unlawfully manage and control real property and improvements located on the                            in Norfolk, Virginia, as an owner and occupant, and did knowingly and intentionally make available for use said place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

19

## COUNT FOURTEEN

### (Possession of Firearms in Furtherance of Drug Trafficking)

On or about January 6, 2023, at Virginia Beach, in the Eastern District of Virginia, the defendant, JARED HADDOCK, did knowingly and unlawfully possess firearms, to wit: a Mossberg CN 108 shotgun and a Jennings Firearms .22 semiautomatic pistol, in furtherance of a drug trafficking crime, that is, the drug trafficking crime described and set forth in Counts One and Eight of this Indictment which is incorporated by reference herein, and which crime constitutes an offense for which the defendant may be prosecuted in a court of the United States.

(In violation of Title 18, United States Code, Sections 924(c)(1)(A).)

## COUNT FIFTEEN

### (Felon in Possession of Firearms)

On or about January 6, 2023, at Virginia Beach, in the Eastern District of Virginia, the defendant, JARED HADDOCK, knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed firearms, to wit, a Mossberg CN 108 shotgun and a Jennings Firearms .22 semiautomatic pistol, said firearms having been shipped and transported in interstate and foreign commerce.

(In violation of Title 18, United States Code, Section 922(g)(10 and 924(a)(8).)

20

## FORFEITURE

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE THAT:

1.     The defendants, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮JARED HADDOCK, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ if convicted of any the violations

alleged in counts one through thirteen of this Indictment, as part of the sentencing of the

defendants, pursuant to F.R.Cr.P. 32.2 and 21 U.S.C. § 853, shall forfeit to the United States:

> a.     Any property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the violation;
>
> b.     Any property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the violation; and,

2.     The defendants, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮JARED HADDOCK, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ if convicted

of any of the violations alleged in this Indictment, shall forfeit to the United States any firearm or

ammunition used in or involved in the violation.

3.     If any property that is subject to forfeiture above is not available, it is the intention

of the United States to seek an order forfeiting substitute assets pursuant to Title 21, United States

Code, Section 853(p) and Federal Rule of Criminal Procedure 32.2(e).

4.     The assets subject to forfeiture include, but are not limited to, the following:

> a.     Mossberg CN 108 shotgun, serial # R441960; and
>
> b.     Jennings .22 semiautomatic pistol, serial #376998.

(All in accordance with Title 21, United States Code, Section 853; Title 18, United States Code, Section 924(d); Title 28, United States Code, Section 2461(c).)

21

*United States v.* ███████████ *; 2:23-cr-* **127**

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office.

A TRUE BILL:

**REDACTED COPY**

_____

FOREPERSON

Jessica D. Aber
UNITED STATES ATTORNEY

By: _____
    John F. Butler
    Anthony Mozzi
    Assistant United States Attorneys
    United States Attorney's Office
    101 West Main Street, Suite 6000
    Norfolk, VA 23510
    Office Number: 757-441-6331
    Email Address:    john.f.butler@usdoj.gov
                    anthony.mozzi@usdoj.gov