IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*



UNITED STATES OF AMERICA

v.  Case No. 2:23-cr-127-3

CLYDE BYRD, JR.

Defendant.

## STATEMENT OF FACTS

The United States and the defendant, CLYDE BYRD (hereinafter, "the defendant"), agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. From on or about February 2021 to February 2024, within the Eastern District of Virginia, the defendant, CLYDE BYRD, his co-defendants, other co-conspirators, and separately-charged defendant #1 (hereinafter "Dillard"), did knowingly and unlawfully combine, conspire, confederate, and agree with each other and with other persons, to knowingly and unlawfully manufacture, distribute, and possess with intent to distribute wholesale quantities of narcotics, including, but not limited to methamphetamine, fentanyl, cocaine, and crack cocaine.

2. From the Summer of 2022 to late 2022, the defendant purchased four to eight-ounce quantities of methamphetamine and one-ounce quantities of fentanyl weekly from Dillard. Conservative estimates for five months of distribution reflect 2,268 grams of methamphetamine and 560 grams of fentanyl, which equate to 5,936 kilograms of converted drug weight (2 kg per gram of methamphetamine and 2.5 kg per gram of fentanyl).

3. The quality of the fentanyl Dillard provided to the defendant was so good that the defendant was able to add an ounce of "cut" to each ounce he received. By adding "cut" or

1



adulterants to the fentanyl it doubled the volume and profits the defendant could make by selling it to other drug dealers and users. The defendant was effectively able to turn one ounce of fentanyl into two ounces for distribution.

4. The defendant also distributed pressed imitation Xanax pills. One customer (hereinafter Customer #1) purchased more than one hundred pills multiple times per week from the defendant. Customer #1 began purchasing ounce quantities of methamphetamine from the defendant, which eventually increased to pound quantities of methamphetamine. For a five-month period, Customer #1 purchased one-pound quantities of methamphetamine for $3,200- and one-ounce quantities of fentanyl for $1,000 from the defendant several times per week. To avoid double-counting, the narcotics referenced in this paragraph were supplied to the defendant by Dillard as reflected in paragraph two above.

5. Controlled purchases were made from Customer #1 on July 1, 2022, and October 26, 2022. The narcotics purchased on July 1, 2022, were tested by the Commonwealth of Virginia Department of Forensic Science and confirmed to be 27.76 grams of methamphetamine. The narcotics purchased on October 26, 2022, were tested by the United States Customs and Border Protection Laboratories and Scientific Services Directorate and confirmed to be 27.99 grams of methamphetamine. Customer #1's only methamphetamine supplier at the time was the defendant.

6. Customer #1 was arrested on October 26, 2022, and methamphetamine and fentanyl were seized. Customer #1 admitted that the narcotics seized were purchased from the defendant. The narcotics were tested by the United States Customs and Border Protection Laboratories and Scientific Services Directorate and confirmed as follows:

    a. 292.78 grams of methamphetamine (96.7% purity +/- 2.8%)
    b. 13.11 grams of methamphetamine
    c. 15.01 grams of fentanyl




7. In late 2022, the defendant began to obtain methamphetamine from co-defendant Corey Wright who admitted his role in the conspiracy and pleaded guilty on July 2, 2024.

8. The defendant used his cellular phone assigned the number (252) XXX-6512 to communicate with Dillard and Wright to coordinate the purchase and distribution of methamphetamine, fentanyl, cocaine, and crack cocaine.

9. For example, on January 13, 2023, during a telephone call with Wright, the defendant stated, "Nah, I'm talkin' 'bout that, um, whatchamacallit… the, um, the Ice." Wright then stated, "Oh. What about it? What you say about that?" The defendant replied, "Freeze people want five jaunts if they got it" and Wright replied, "I'ma get as many as I can…" When the defendant referred to "ice" he was referring to methamphetamine. When he referred to "Freeze", he was referring to Julius Freeze, a drug dealer who was charged in a separate federal case.

10. From mid-2022 through September 2022, the defendant utilized and allowed other co-conspirators, such as Wright and Dillard, to utilize his residence on Monticello Avenue in Norfolk, Virginia, for the purposes of furthering the drug trafficking conspiracy.

11. For example, during a telephone call on January 7, 2023, Wright discussed adulterating and repackaging narcotics with the defendant and stated, "I need you take me out uh…uh…uh twenty-one (21) grams of some uh…twenty-two (22) grams and some cut, too." The defendant responded, "A'ight, you gotta bring a scale, I ain't even got one."

12. Throughout the conspiracy, the defendant also obtained methamphetamine through the mail, in quantities as high as twenty to thirty pounds.

13. On at least one occasion, the defendant distributed twenty pounds (nine kilograms) of methamphetamine to Customer #2.

3

14. In early 2023, the defendant distributed one half pound of methamphetamine to Customer #3 and proceeded to distribute one half pound to pound quantities of methamphetamine to Customer #3. The defendant also sold fentanyl to Customer #3. On one occasion the defendant sold one ounce of fentanyl to Customer #3, who later distributed half the ounce to co-defendant Holly Triplett.

15. From in or around November 2022 until in or around March 2023, the defendant began supplying Customer #4 with one-pound quantities of methamphetamine for $3,000 per pound every other day. Conservative estimates for this four plus month period equate to 60 pounds or 27 kilograms of methamphetamine. From in or around March to August 2023, Customer #4 purchased half-pound quantities of methamphetamine from the defendant every other day. Conservative estimates for this six-month period equate to 45 pounds or 20 kilograms of methamphetamine. On numerous occasions, the defendant "fronted" methamphetamine to Customer #4 in ten (4.5 kg) to fifteen-pound (6.8kg) quantities.

16. Beginning in the Spring of 2022, Customer #4 also purchased approximately twenty Xanax pills per week from the defendant through late 2022.

17. On August 25, 2023, approximately 51 grams of a crystalline substance was recovered from Customer #4, which was tested by the Commonwealth of Virginia Department of Forensic Science and determined to contain methamphetamine. The defendant was Customer #4's only source of methamphetamine at that time.

18. The defendant's participation in the events described above was undertaken knowingly, intentionally, and unlawfully, and not as a result of an accident, mistake, or other innocent reason.

4



19. The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offense charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities.

Respectfully submitted,

Jessica D. Aber
United States Attorney

Date: _____  By: _____

John F. Butler
Luke J. Bresnahan
Assistant United States Attorneys

5

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, CLYDE BYRD, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
CLYDE BYRD

I am CLYDE BYRD's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Don L. Scott, Jr., Esq.
Counsel for the Defendant, CLYDE BYRD