

FILED
IN OPEN COURT

AUG 19 2024

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
*Norfolk Division*

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HOLLY TRIPLETT,<br><br>Defendant. | Case No. 2:23-cr-127-6 |

### STATEMENT OF FACTS

The United States and the defendant, HOLLY TRIPLETT (hereinafter, "the defendant"), agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. For a period of time from in or about February 2021 to in or about October 2023, within the Eastern District of Virginia, the defendant, her co-defendants, and co-conspirators did knowingly, intentionally, and unlawfully combine, conspire, confederate, and agree with each other and with other persons, to knowingly and intentionally manufacture, distribute, and possess with intent to manufacture and distribute wholesale quantities of narcotics, including, but not limited to cocaine, fentanyl, and more than fifty (50) grams of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance.

2. The defendant used multiple cellular telephones to facilitate and further the conspiracy, including a telephone assigned the number (757) XXX-7033.

3. On January 25, 2023, the defendant was arrested in Portsmouth, Virginia, on an outstanding state warrant. After being advised of her rights and agreeing to answer questions, the defendant admitted that she began obtaining methamphetamine from Malik DILLARD

1

("DILLARD") in early January of 2022. From that time through April 2022, she initially obtained one to two ounces of methamphetamine two to three times per week up to as much as three pounds of methamphetamine per week from DILLARD and/or other co-conspirators. The defendant also obtained cocaine and fentanyl from DILLARD for further distribution.

4. In the early months of 2022, DILLARD was storing methamphetamine at co-defendant Aimee YANEZ's ("YANEZ") residence on Old College Drive in Suffolk, Virginia, and the defendant would often meet DILLARD and/or YANEZ at that location to obtain methamphetamine and/or to pay for narcotics DILLARD had previously provided on consignment.

5. On April 1, 2022, the defendant discussed the distribution of methamphetamine over the telephone with DILLARD, who stated, "I got one more move for you to make. While you go make that move, I'm gon' go get you right. And…we'll meet back—we'll meet back at the same place 'cause…it was—what I—what I had I had to dig in for this person and it only made sense …so— my plan is…let—it's a two piece. So, I'ma let you take these two, shoot there while I shoot and grab, and then we'll be back. We should be back around the same time 'cause we're not goin' far from each other. A'ight…so I'm sittin' here waitin' on you." The defendant replied, "Okay I'll see you in a minute, a'ight. A'ight bye."

6. The term "two piece" refers to two pounds of methamphetamine. In the preceding conversation, DILLARD is explaining that he had another customer to fulfil an order for, after which the defendant and DILLARD would meet at a predetermined location where the defendant would obtain two pounds of methamphetamine from DILLARD.

7. On April 9, 2022, during a phone call with DILLARD, the defendant discussed payments for narcotics as well as co-defendants Leo FREUH ("FREUH") and YANEZ. The defendant stated, "And so, I was gonna tell you too, [FREUH] has his money and he's ready. Do



you want me to bring him with me?" DILLARD replied, "Can you just grab that and then I just give that to you and you can send it back with him?" The defendant interjected, "Perfect. No, that's fine" and DILLARD continued, "A'ight, yeah 'cause I can just give that to you and that you can just give me that bread." After the defendant answered, "Okay," DILLARD stated, "A'ight, that's [YANEZ] hittin' me right now. I- I'll see. . ." and the defendant stated, "Okay, then tell her, um… I don't know why that, uh, money didn't go through on Cash App. Tell her I've got her. I'm going to bring that too."

8. Throughout the conspiracy, the defendant and her co-conspirators referred to money as "bread." It was part of the conspiracy for the conspirators to use internet payment services such as CashApp to make payments for narcotics.



9. On one occasion during the course of the conspiracy, the defendant received a box containing four ~~pounds~~ ounces of methamphetamine from a supplier and delivered it to another coconspirator.

10. For a brief period, the defendant stopped distributing narcotics due to a surgery she had in the summer of 2022. Soon thereafter, DILLARD contacted the defendant and persuaded her to return to distributing methamphetamine, which she agreed to do.

11. On December 6, 2022, the defendant drove to a parking lot in Virginia Beach, Virginia, to meet with an individual who had previously agreed to serve as confidential informant for law enforcement (hereinafter "CI"). The defendant called the CI and told him that she was on her way. Shortly thereafter, the defendant arrived at the parking lot and parked next to the CI's vehicle. The CI then got into defendant's vehicle and the defendant sold the CI approximately 54 grams of methamphetamine.



12. The methamphetamine the defendant sold on December 6, 2022, was tested by the Laboratories and Scientific Service Directorate of U.S. Customs and Border Protection, which issued lab report number SV20222731 confirming that the white crystalline substance was in fact 54.02 grams of methamphetamine hydrochloride, a Schedule II controlled substance, and was 97.1% pure, plus or minus 2.8%.

13. On January 4, 2023, the defendant distributed one half of an ounce of methamphetamine and one half of an ounce of fentanyl to Customer #1. On at least two other occasions, the defendant distributed one half pound quantities of methamphetamine to Customer #1. On at least one other occasion after this but before the defendant's arrest, Customer #1 distributed one half of an ounce of fentanyl to the defendant.

14. On January 4, 2023, two controlled purchases of methamphetamine were made from the defendant. The narcotics purchased on January 4, 2023, were tested by the Laboratories and Scientific Service Directorate of U.S. Customs and Border Protection and confirmed to be approximately 111 grams of methamphetamine. Approximately 86 grams was 101.4% pure, plus or minus 2.8%. The remainder was not tested for purity.

15. Approximately one to two weeks before her arrest on January 25, 2023, the defendant obtained one pound of methamphetamine from DILLARD on consignment.

16. During the interview on January 25, 2023, the defendant received a call on her cellular telephone from a telephone number ending -8536. The defendant stated that the -8536 number was DILLARD. The defendant further stated that she had spoken with DILLARD earlier that same day and that DILLARD was expecting a package containing twenty pounds of methamphetamine to be delivered.

17. In addition to distributing methamphetamine, cocaine, and fentanyl as set forth herein, the defendant introduced multiple customers, distributors, and eventual co-conspirators to DILLARD, including Leo FRUEH and Christopher EANES.

18. The defendant's participation in the events described was undertaken knowingly, intentionally, and unlawfully, and not as a result of an accident, mistake, or other innocent reason.

19. The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offense charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities.

Respectfully submitted,

Jessica D. Aber
United States Attorney

Date: 8/19/24

By: _____
John F. Butler
Luke J. Bresnahan
Assistant United States Attorneys

5

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, HOLLY TRIPLETT, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
HOLLY TRIPLETT

I am HOLLY TRIPLETT's attorney. I have carefully reviewed the above Statement of Facts with her. To my knowledge, her decision to stipulate to these facts is an informed and voluntary one.

_____
Mary Morgan, Esq.
Attorney for HOLLY TRIPLETT