IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTOPHER EANES,<br><br>Defendant. | Criminal No. 2:23-CR-127-7 |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

  The United States of America, through its attorneys, Jessica D. Aber, United States Attorney, and Luke J. Bresnahan and John F. Butler, Assistant United States Attorneys, hereby submits its position with respect to the defendant's sentencing factors. In the Presentence Investigation Report (PSR) prepared in this matter, the United States Probation Office determined the applicable guidelines to be 235 to 293 months, based on a Total Offense Level of 33 and a Criminal History Category of VI. In accordance with Section 6A1.2 of the Sentencing Guidelines Manual ("U.S.S.G") and this Court's policy regarding sentencing, the United States represents that it has reviewed the PSR and consulted with the Probation Office and defense counsel. There are no objections from either party.

  For the reasons outlined below, the United States respectfully submits that a sentence at the lower end of the advisory guidelines of 240 months, would be sufficient but not greater than necessary to accomplish the goals of 18 U.S.C. § 3553(a).

**I. PROCEDURAL BACKGROUND**

  The defendant, together with ten co-conspirators were named in a fifteen-count Indictment returned by a grand jury sitting in Norfolk on October 25, 2023. PSR ¶ 1.

1

The defendant was charged with one count: Count One charged him with a two- and half-year conspiracy to manufacture, distribute, and possess with intent to manufacture and distribute methamphetamine and fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and (b)(1)(B).

On June 13, 2024, the defendant agreed to plead guilty to Count One of the Indictment.

## II.    MOTION FOR ACCEPTANCE OF RESPONSIBILITY

The United States moves this Court under U.S.S.G. § 3E1.1(b) to grant an additional one-level reduction in the defendant's offense level for acceptance of responsibility. The defendant assisted authorities in the investigation and prosecution of this case by timely notifying the government of his intention to plead guilty, thereby allowing it to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently.

## III.   STANDARDS GOVERNING SENTENCING

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court made clear that sentencing courts should consult [the Sentencing] Guidelines and take them into account when sentencing." 543 U.S. at 264. The Supreme Court provided this direction to promote the sentencing goals of Congress, namely to "provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities." *Booker*, 543 U.S. at 264 (quoting 28 U.S.C. § 991(b)(1)(B)). In its decision in *Molina-Martinez v. United States*, the Court emphasized the role the Guidelines play in achieving "[u]niformity and proportionality in sentencing," and noted that "the Guidelines are not only the starting point for most federal sentencing proceedings but also the lodestar." 136 S. Ct. 1338, 1346 (2016). The Fourth Circuit has provided the following guidance in the wake of *Booker*:

> A district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence.

*United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Thus, sentencing courts must consider the factors outlined in 18 U.S.C. § 3553(a), including the need for the sentence "to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) and (B).

"[I]n imposing a sentence after *Booker*, the district court must engage in a multi-step process. First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). "Next, the court must 'determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" *Id.* (quoting *United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)). In making this determination,

> a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need "to reflect the seriousness of the offense," provide "just punishment," "afford adequate deterrence," "protect the public," and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

*United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006) (quoting 18 U.S.C. § 3553(a)).

Under 18 U.S.C. § 3553(a), when imposing a sentence that is sufficient but not greater than necessary, the Court shall consider (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the need for the sentence imposed to promote the goals of sentencing, (4) the kinds of sentences available, (5) the sentencing guideline range, (6) any pertinent policy statement issued by the Sentencing Commission, (7) the need to avoid

unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (8) the need to provide restitution to any victims of the offense.

IV.     **ARGUMENT**

   **A. Nature and Circumstances of the Offense**

The defendant played a significant role in a large methamphetamine, cocaine, and fentanyl conspiracy that spanned multiple years, multiple states, and involved several drug dealers beyond those with whom he was indicted. The defendant was squarely in the middle of a large-scale drug network. The quantity of methamphetamine and fentanyl distributed by the defendant is significant: 47,371.25 kilograms of converted drug weight (20.638 kilograms of methamphetamine and 2.4381 kilograms of fentanyl), which results in the second highest base offense level (36) in the U.S.S.G. drug quantity table. PSR ¶ 26.

Undoubtedly, the defendant's drug dealing had a crushing impact on the faceless, nameless victims caught in the grip of addiction and their families who desperately try to help. According to the Virginia Department of Health's Chief Medical Examiner, the number of fatal overdose methamphetamine deaths in Virginia has skyrocketed, from a total of six in 2007 to 525 in 2023[1]— a 8,650% increase. Further, there are no approved medications effective at treating methamphetamine addiction—there is no methadone equivalent for methamphetamine.

Fentanyl distribution in particular results in countless victims throughout our community and nation who have been caught in the grip of one of the most, if not the most, powerfully addictive drug. The strength of fentanyl is stronger than heroin and other opioids, and it causes victims to stay more loyal to their dealer than to work with police to stop the spread of a poison that is killing people in record numbers. Fentanyl has been the driving force behind the large

---

[1] https://www.vdh.virginia.gov/content/uploads/sites/18/2024/08/Quarterly-Drug-Death-Report-Q1-2024.pdf (last visited October 1, 2024).

4

increases in fatal overdoses since 2013, which has become the leading cause of unnatural death in Virginia surpassing car accidents and gun homicides combined.[2]

Methamphetamine and fentanyl distribution is a scourge on society, wreaking havoc in its users' lives, breaking families apart, and taking a severe toll on the public health social safety net. It eats at the heart and soul of our community—a fact that was not considered by the defendant. As a drug user himself, and someone who has first-hand knowledge of how drugs can destroy families, he remained indifferent to the dozens of others whose lives were destroyed by his drugs. Instead of contributing to the community, he has spent a lifetime damaging it.

In mitigation, the government recognizes the defendant was not the leader of the conspiracy and that he was quick to take responsibility. The defendant was a mid-level drug dealer working with Malik Dillard ("Dillard"), a separately charged, professional drug dealer who pled guilty to Distribution of Methamphetamine and Conspiracy to Manufacture, Distribute, and Possess with Intent to Manufacture and Distribute Methamphetamine, and was sentenced to three hundred sixty (360) months. *See United States v. Dillard*, 2:23-cr-065.

The defendant entered federal custody on March 20, 2024, and pleaded guilty less than three months later on June 13, 2024. ECF Nos. 141, 180; PSR ¶ 2. His decision to accept responsibility saved the government considerable resources and resulted in a three-point reduction in defendant's offense level. PSR ¶¶ 33-34. For this reason balanced against the aggravation of his conduct, his background and criminal history, the Government requests a sentence at the lower end of the guidelines—240 months.

---

[2] https://www.vdh.virginia.gov/content/uploads/sites/18/2024/08/Quarterly-Drug-Death-Report-Q1-2024.pdf (last visited October 1, 2024).

### B. History and Characteristics of the Defendant

The history and characteristics of the defendant are not mitigating: He is 39 years old, has minimal work history, had three children with different women, and spent much of his life as a criminal. Moreover, despite years of incarceration, the defendant has not been deterred from engaging in a life of crime.

The defendant had a difficult childhood. He never knew who his biological father was, and his mother effectively abandoned him at a hospital as an infant following his diagnosis for spinal meningitis and bilateral pneumonia. PSR ¶ 74. He was eventually adopted and raised primarily by his grandaunt and granduncle, neither of whom have a history of criminal activity or substance abuse. *Id*. ¶¶ 74, 76. His grandaunt and granduncle informed him they were his biological parents. *Id*. ¶ 74.

The defendant's life of crime began when he was convicted of assault and battery at 13 years old. *Id*. ¶ 38. The defendant was charged and convicted multiple times in juvenile court between ages 13 and 17, where he first learned that his grandaunt and granduncle were not his biological parents. *Id*. ¶¶ 38-44, 74-75. When he was approximately 16 years old, he began to develop a relationship with his mother, who currently lives in North Carolina, and with whom he maintains contact. *Id*. ¶ 75.

The defendant's granduncle passed away in 2004, and his grandaunt currently lives in Chesapeake, Virginia. *Id*. ¶ 76. The defendant has one half-brother and three half-sisters, one of whom resides in Alabama and the rest in North Carolina. *Id*. None of his family members have a criminal record or history of substance abuse. *Id*.

The defendant has resided in Virginia his whole life except for one year when he resided in New Jersey. *Id*. ¶ 77. The defendant has also been incarcerated for several years. *Id*. ¶¶ 77, 92,

6

94, 96-97, 99-101. Moreover, since March 2011, the defendant's probation has been revoked on six occasions resulting in him being reincarcerated. *Id*. ¶ 77. The defendant admitted to being an inactive member of the Gangster Disciples gang and continuing to associate with known members. *Id*. ¶ 78.

The defendant is divorced and has three children with three different women. *Id*. ¶¶ 79-82. One daughter is 19 years old and is being raised by her mother in Chesapeake, Virginia. *Id*. ¶ 80. Another child is 17 years old and being raised by his mother in Las Vegas. *Id*. ¶ 81. The youngest, age 14, was raised by her mother until October 2022, at which point the defendant had custody of the child until the time of his arrest in January 2023. *Id*. ¶ 82. The defendant owes more than $400 per month in child support and is over $135,000 in arrears. *Id*. ¶¶ 80-82.

The defendant is generally in good physical health but reports mental health issues. *Id*. ¶¶ 85-86. The government recommends a new mental health assessment and mental health treatment.

The defendant has a long history of substance abuse. He first used marijuana at twelve years old and used regularly as a juvenile and adult. *Id*. ¶ 88. He first tried "crack" cocaine in his early twenties, but reported he has not used the drug since then. *Id*. He first used heroin at 17 or 18 years old and soon began using the drug daily. *Id*. The defendant reported that he would get addicted to the drug each time he was released from jail. *Id*. He first used methamphetamine when he was approximately 27 years old, which he used heavily since 2018 and again after being released from jail in 2022. *Id*.

Defendant's participation in substance abuse treatment programs while on supervised probation has been abysmal. *Id*. ¶ 89. He was discharged from four different programs and has tested positive for various controlled substances including opiates and heroin, on numerous occasions. *Id*. Despite his lack of success with substance abuse programs, the government

recommends he be considered for substance abuse treatment programs while in the Bureau of Prisons.

The defendant did not complete high school past the eleventh grade, and reported he was at one point transferred to an alternative school following disciplinary infractions for fighting. *Id*. ¶ 91. Unfortunately, the defendant has shown no serious attempts to become a contributing member of society, professionally or otherwise. He has no verified legitimate work history, lost one of the only jobs he reported due to his drug addiction, and has spent several years of his adult life incarcerated. *Id*.

*Criminal History*

Even though nine of the defendant's adult convictions did not receive any criminal history points, he is still in the highest criminal history category recognized by the guidelines. Indeed, his criminal history score of seventeen, which includes one point because he was under a criminal justice sentence at the time of the instant offense (PSR ¶¶ 62-64), is four points higher than the thirteen points required for a criminal history category of VI. Still, the defendant's criminal history is so egregious and underrepresented in his criminal history category that a chart is warranted.

| Date/Age | Charge | Sentence | Background | Points |
|---|---|---|---|---|
| 1999/13 (¶ 38-40) | Assault and Battery (3) | 12 months unsupervised probation, complete Chesapeake Boys Group Home program<br><br>Multiple parole violations followed sentencing on these assaults:<br><br>02/08/2001 12/12/2001 | | 0 |

|  |  | 05/07/2002<br>09/25/2003 |  |  |
|---|---|---|---|---|
| 1999/14<br><br>(¶ 41) | Destruction of Property | Committed to Department of Juvenile Justice<br><br>Multiple parole violations followed:<br><br>12/12/2001<br>05/07/2002<br>09/25/2003 |  | 0 |
| 2001/15<br><br>(¶ 42) | Mob: Simple Assault or Battery | Committed to Department of Juvenile Justice<br><br>See parole violations listed above |  | 0 |
| 2001/15<br><br>(¶ 43) | Unauthorized Use of Vehicle | Committed to Department of Justice<br><br>See parole violations listed above |  | 0 |
| 2003/17<br><br>(¶ 44) | Assault and Battery | 6 months in jail, 3 months suspended |  | 0 |
| 2005/19<br><br>(¶ 47) | Receiving Stolen Goods | 12 months in jail, 6 months suspended |  | 0 |
| 2006/20<br><br>(¶ 48) | Driving Under Suspension | 30 days in jail, suspended |  | 0 |
| 2006/20<br><br>(¶ 49) | Damage Property | 12 months in jail, 11 months and 25 days suspended | The victim reported that the defendant punched the passenger side door of his truck, creating a dent, because the defendant was mad at the victim for dating the defendant's mother. | 0 |

| | | | | |
|---|---|---|---|---|
| 2006/20 (¶ 50) | Assault and Battery | 90 days in jail, suspended | | 0 |
| 2008/23 (¶ 51) | Driving Under Suspension | 30 days in jail, suspended | | 0 |
| 2009/23 (¶ 52) | Possess Heroin | 08/11/2009, finding sufficient for conviction, deferred further finding, conditioned upon being of good behavior for 2 years<br><br>8/13/2010, found guilty, 3 years and 6 months Department of Corrections, 3 years and 3 months suspended | The defendant's performance on probation was abysmal, resulting in the revocation of his probation on multiple occasions:<br><br>07/24/2012<br>09/09/2014<br>02/12/2016<br>09/29/2017 | 3 |
| | Driving While License Revoked | 12 months in jail, 11 months and 15 days suspended | | |
| 2010/24 (¶ 53) | Possess Heroin | 01/10/2011, 3 years Department of Corrections, 2 years and 9 months suspended, supervised probation for an indeterminate period | The defendant's performance on probation was again abysmal, resulting in the revocation of his probation on multiple occasions:<br><br>06/21/2012<br>06/23/2014<br>06/23/2015<br>10/15/2015 | 3 |
| 2010/24 (¶ 54) | Failure to Appear | 10 days in jail and costs | | 0 |
| 2010/24 | Failure to Appear | 10 days in jail and costs | | 0 |

| | | | | |
|---|---|---|---|---|
| (¶ 55) | | | | |
| 2012/26 (¶ 56) | Driving Under Suspension | 90 days in jail, suspended, driver's license suspended | | 0 |
| 2012/26 (¶ 57) | Driving Under Suspension | 10 days in jail | | 0 |
| 2019/33 (¶ 58) | Eluding Police | 3 years Department of Corrections, all but 1 year suspended, supervised probation for 3 years<br><br>01/22/2024, probation revoked, 2 years Department of Corrections | A State Trooper had his emergency lights activated driving on I-64 while in route to a motor vehicle crash. He then observed a vehicle driven by the defendant that accelerated in front of him. The trooper drove behind the defendant and paced him at over 100 miles per hour. The trooper activated his siren and the defendant then began accelerating again and weaving in and out of traffic. He exited the interstate and then drove on the wrong side of the road through a road closure and into a neighborhood. The defendant then stopped his vehicle and surrendered to the trooper. | 3 |
| | Drive Motor Vehicle-License Revoked Suspended | 12 months in jail, concurrent with other count, 11 months and 20 days suspended, supervised probation for 3 years | | |
| 2019/33 (¶ 59) | Use of Firearm in the Commission of a Felony<br><br>Robbery of Residence with Gun or Simulated Gun | 3 years Department of Corrections, supervised probation for an indeterminate period<br><br>09/21/2020, 10 years Department of Corrections, suspended, supervised probation for an | On June 4, 2019, three individuals were inside a motel room at the Dolphin Inn. The defendant and another known Gangster Disciple gang member were let into the room by the occupants. The defendant and the other gang member pulled out firearms and made the three victims lay down on the floor. They robbed the victims of money and drugs and one victim was struck in the head by a firearm. The firearm discharged, striking another victim in the arm and | 3 |

11

| | | indeterminate period<br><br>12/20/2023, probation revoked, 10 years Department of Corrections, 9 years and 9 months suspended, supervised probation not to exceed 5 years | upper torso. The defendant and the other assailant fled the scene. | |
|---|---|---|---|---|
| 2023/37<br><br>(¶ 60) | Eluding Police-Endangerment<br><br><br>Driving Under Suspension<br><br><br><br>Reckless Driving | 5 years Department of Corrections, 4 years suspended, supervised probation not to exceed 5 years<br><br>10 days in jail, unsupervised probation for 12 months<br><br>Fines and costs | Officers observed the defendant driving a vehicle and recognized him. The officer knew he had an outstanding warrant and a suspended license. The officer attempted to stop the defendant, but he accelerated to over 70 miles per hour in a 45 mile per hour zone and began weaving in and out of traffic before running three red lights. The officer ceased the pursuit and obtained warrants. | 2 |
| 2023/37<br><br>(¶ 61) | Eluding | 5 years Department of Corrections, 4 years suspended, supervised probation for 3 years | | 2 |

The defendant's criminal history, which includes **more than 25 arrests and more than 20 convictions**, spans 19 pages of his PSR. He is a high-risk recidivist, and his life is devoid of respect for the law and for other people. Based on the defendant's criminal history, the government could have moved for an upward departure or requested upward variance but refrains from doing

so given the speed with which the defendant accepted responsibility. Nevertheless, to protect the public, to hold the defendant accountable for his crimes, and in consideration of the defendant's egregious criminal history, including use of a firearm in commission of a felony, a sentence of at least 240 months is warranted.

### C. Other Pertinent § 3553(a) Factors and Avoiding Unwarranted Sentencing Disparities

In addition to the facts of the case and the defendant's personal history and characteristics, the government also notes the need to protect the public from this defendant, to recognize the victims of his crimes, promote respect for the law, and afford adequate deterrence.

While affording adequate general deterrence may not be a primary driver in this Court's assessment of an appropriate sentence, specific deterrence for this particular defendant should be considered. Despite the defendant's numerous convictions and arrests, nothing has deterred him from continuing to live with flagrant disregard for the law. A sentence within the guidelines range is the only sentence that will provide adequate deterrence and protect the public from this defendant.

The government is also cognizant of the need to avoid unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6). As a mid-level drug dealer of methamphetamine and fentanyl in a widespread drug distribution conspiracy, and considering his atrocious criminal history and personal characteristics as well as the sentences of other similarly situated defendants in this District, 240 years is sufficient, but not greater than necessary to achieve the goals set forth in § 3553. If a 240-month sentence is imposed, it will be 10 years lower than his supplier (Malik Dillard, 2:23-cr-65), whose criminal history points were six lower than the defendant's and whose total offense level was only four points higher (37). Such a sentence would be consistent with this Court's sentencing of co-defendant Jared Haddock as well, who received 126 months based on a

total offense level of 29 and a criminal history category of VI. *See Haddock*, 2:23-cr-127, PSR at ¶¶ 132-133. The defendant is responsible for 39,618.03 kilograms more converted drug weight than defendant Haddock (5,826.43 kilograms of which was converted drug weight for fentanyl). *Compare* Eanes PSR at ¶ 26, *with* Haddock PSR at ¶ 24.

### IV.  Conclusion

While the defendant accepted responsibility early in this matter, the fact remains that he has devoted himself to a lifetime of crime, demonstrates a high risk of recidivism, and remains a threat to the community. His terrible, repeated, and escalating criminal history as well as the seriousness of this case and his role in it cannot be overlooked. To protect the public, to promote respect for the law, to consider the victims of his offense, to afford adequate specific deterrence, and to avoid unwarranted sentence disparities, the defendant should be sentenced to 240 months— a sentence at the lower end of the advisory guidelines range.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:     /s/
Luke J. Bresnahan
John F. Butler
Assistant United States Attorneys
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number: 757-441-6331
Facsimile Number: 757-441-6689
Email Address: luke.bresnahan@usdoj.gov
john.f.butler@usdoj.gov

CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on this 4th day of October, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

     I HEREBY CERTIFY that on this 4th day of October, 2024, I sent by electronic mail a true and correct copy of the foregoing to the following:

> Jeffrey A. Noll
> Senior United States Probation Officer
> 827 Diligence Drive, Suite 210
> Newport News, VA 23606

>      /s/
> Luke J. Bresnahan
> Assistant United States Attorney
> United States Attorney's Office
> 101 West Main Street, Suite 8000
> Norfolk, Virginia 23510
> Office Number: 757-441-6331
> Facsimile Number: 757-441-6689
> Email Address: luke.bresnahan@usdoj.gov